**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **STARLA R. S.[1],** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 3:25-cv-01387** |
| | ) | |
| **FRANK BISIGNANO, Commissioner of Social Security,[2]** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | | |

## MEMORANDUM & ORDER

**DUGAN, District Judge:**

In accordance with 42 U.S.C. § 405(g), Plaintiff, represented by counsel, seeks judicial review of the final agency decision denying her application for Disability Insurance Benefits ("DIB") pursuant to 42 U.S.C. § 423. For the reasons set forth below, the decision is affirmed.

## PROCEDURAL HISTORY

Plaintiff applied for disability benefits on June 11, 2022. (Doc. 13-2, pg. 16). After being denied at both the initial level (Doc. 13-3, pg. 11) and at the level of reconsideration (Doc. 13-3, pg. 21), Plaintiff requested a hearing before an administrative law judge (herein "ALJ"). (Doc. 13-4, pgs. 18-19). On July 12, 2024, the ALJ issued a decision finding that Plaintiff was not disabled. (Doc. 13-1, pgs. 16-29). On May 20, 2025, the Appeals

[1] In keeping with the court's practice, Plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. See, Fed. R. Civ. P. 5.2(c) and the Advisory Committee Notes thereto.
[2] Frank Bisignano became the Commissioner of Social Security on May 6, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the Court **DIRECTS** the Clerk to substitute Frank Bisignano as the defendant in this suit.

Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (Doc. 13-2, pgs. 2-4). Plaintiff has exhausted her administrative remedies, and this action was timely filed.

**ISSUES RAISED BY PLAINTIFF**

Plaintiff raises the following issue:

1. Whether the ALJ erred in assessing a Residual Functional Capacity ("RFC") inconsistent with his prior step-two finding of a severe mental impairment.

**APPLICABLE LEGAL STANDARDS**

To qualify for DIB, a claimant must be disabled within the meaning of the applicable statutes.[3] Under the Social Security Act, a person is considered disabled if they possess an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a).

To determine whether a plaintiff is disabled, the ALJ considers the following five questions in order: (1) is the plaintiff unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform her former occupation? (5) Is the plaintiff unable to perform any other work? *See* 20 C.F.R. § 404.1520.

[3] The statutes and regulations pertaining to DIB are found at 42 U.S.C. § 423, et seq., and 20 C.F.R. pt. 404

An affirmative answer at either step three or step five leads to a finding that the plaintiff is disabled. A negative answer at any step, other than at step three, precludes a finding of disability. The plaintiff bears the burden of proof at steps one through four. Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to establish that jobs existing in significant numbers in the national economy are ones which Plaintiff can perform. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

Severe impairments under step 2 are defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003) (citation modified). Impairments which are expected to result in death or those which have lasted or are expected to last for a continuous period of at least twelve months, qualify as severe under the duration requirement. 20 C.F.R. §§ 404.1529(a)(4)(ii); 404.1509; 416.920(a)(4)(ii). The step two determination of severity is "merely a threshold requirement." *Castile v. Astrue*, 617 F.3d 923, 926-27 (7th Cir. 2010) (quoting *Hickman v. Apfel*, 187 F.3d 683, 688 (7th Cir. 1999)). The ALJ, having found that one or more of the claimant's ailments are severe, must "consider the aggregate effect of the entire constellation of ailments." *Golembieski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003).

**STANDARD OF REVIEW**

It is important the Court recognize and acknowledge the scope of review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . ." 42 U.S.C. § 405(g). Thus, this Court must

determine not whether Plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). The Supreme Court defines substantial evidence as, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. *See Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010).

**THE DECISION OF THE ALJ**

The ALJ followed the five-step analysis described above. He determined that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of March 27, 2022. (Doc. 13-2, pg. 19). Plaintiff is insured for DIB through December 31, 2027. (Doc. 13-2, pg. 19).

The ALJ found that Plaintiff has severe impairments of "vestibular migraines, persistent postural perceptual dizziness, and anxiety disorder." (Doc. 13-2, pg. 19). The ALJ further found that Plaintiff's hyperthyroidism and obesity were non-severe impairments. (Doc. 13-2, pg. 19).

The ALJ found that Plaintiff has residual functional capacity "to perform light work as defined in 20 CFR 404.1567(b) except never climb; occasionally balance, stoop, kneel, crouch, and crawl." (Doc. 13-2, pg. 21).

The ALJ found that Plaintiff is "unable to perform any past relevant work." (Doc. 13-2, pg. 27-28). The ALJ then determined that Plaintiff was not disabled because there are jobs that exist in significant number in the national economy she could perform. (Doc. 13-2, pg. 28-29).

## THE EVIDENTIARY RECORD

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record is directed to Plaintiff's arguments.

### 1. Agency Forms

Plaintiff was born in 1977 and was 44 years old on the date of the ALJ's decision. (Doc. 13-2, pg. 28). Plaintiff said she stopped working on March 27, 2022, because of her conditions. (Doc. 13-6, pg. 29). She worked as a licensed practice nurse from 2012 through March 2022. (Doc. 13-6, pg. 30).

In a Function Report submitted in January 2023, Plaintiff stated that she is unable to drive; some days she is unable to ride with others in a vehicle. (Doc. 13-6, pg. 47). Plaintiff stated that she is unable to walk or get out of bed some days due to dizziness. (*Id.*). She reported extreme dizziness spells, weakness, and general unwellness; exertion and visual stimuli exacerbate the symptoms. (*Id.*). Plaintiff stated that she is able to prepare quick and easy meals. (Doc. 13-6, pg. 49). Plaintiff is capable of cleaning and

doing laundry with breaks in between tasks on good days. (*Id.*). She said she will attend church on Sundays in the morning and evening but does not socialize. (Doc. 13-6, pg. 51). Plaintiff stated that her condition impairs her ability to lift, squat, bend, stand, reach, walk, kneel, climb stairs, and see. (Doc. 13-6, pg. 52).

**2. Evidentiary Hearing**

Plaintiff was represented by an attorney at the evidentiary hearing on May 30, 2024. (Doc. 13-2, pg. 34). Plaintiff testified that she first experienced dizziness in September of 2021. (Doc. 13-2, pg. 47). The condition progressively worsened where she could not drive or walk to work. (Doc. 13-2, pg. 48). She said that the condition is chronic and driving became a danger due to the dizziness getting progressively worse towards the end of the day. (*Id.*). Plaintiff stated that any sort of visual stimuli, like scrolling on her phone or the computer would make her ill. (*Id.*). Plaintiff testified that she cannot watch anything with flashing lights or rapidly changing scenes because they make her dizzy. (Doc. 13-2, pg. 49). She also testified that after walking approximately one hundred feet, her peripheral vision bothers her. (Doc. 13-2, pg. 50). Plaintiff said that she has fallen multiple times trying to walk unassisted. (Doc. 13-2, pg. 51).

**3. Relevant Medical Records**

Plaintiff presented to Marc Sachs, an otolaryngologist[4] ("ENT") at Cape ENT Group, on January 17, 2022. Due to complaints of her right ear "feeling full" an

[4] Otolaryngology refers to the "branch of medicine that deals with diagnosis and treatment of diseases of the ear, nose, and throat." https://www.medical-dictionary.thefreedictionary.com/otolaryngology, visited on September 3, 2026.

audiometry was conducted. The results of the exam were that her hearing sensitivities were within normal limits in both ears. (Doc. 13-7, pgs. 7-9).

Plaintiff presented to Erica Rouse, a family nurse practitioner at Cape ENT Group, on February 22, 2022. The appointment was a follow-up to the previous appointment in January. Plaintiff stated that her symptoms had worsened since January and reported that she was constantly off balance and experienced flares where the dizziness would be so bad that she was unable to get out of bed. Plaintiff was referred for a vestibular exam using videonystagmography[5] ("VNG"). (Doc. 13-7, pg. 19).

Plaintiff then presented to Marc Sachs once more on March 29, 2022. The results of the VNG showed that she had a 48-49% unilateral weakness with some central signs as well. The MRI results from just before this appointment were found to be unremarkable. Plaintiff denied any hearing loss or tinnitus. She was referred to a neurotologist following the appointment. (Doc. 13-7, pgs. 21-24, 113, 115).

Plaintiff presented to Christopher Ray, a neurology resident at Barnes Jewish West County Hospital, on April 26, 2022. Plaintiff presented symptoms with leftward head motion. Plaintiff noted she had developed tinnitus over the previous two weeks. She lost 45 pounds due to poor appetite. A physical examination was taken; vestibular testing showed no spontaneous or gaze evoked nystagmus[6], provocative testing showed no nystagmus to the right or left. (Doc. 13-7, pgs. 43, 46, 50, 52).

---

[5] Videonystagmography (VNG) refers to a technology "for testing inner ear and central motor functions . . .." https://medical-dictionary.thefreedictionary.com/videonystagmography, visited on September 3, 2026.

[6] Nystagmus refers to "rhythmic, oscillating motions of the eyes." https://medical-dictionary.thefreedictionary.com/nystagmus, visited on September 3, 2026.

Plaintiff presented via telemedicine to Nedim Durakovic, an ENT at the Center for Advanced Medicine, on August 16, 2022, and then in person on February 16, 2023. Plaintiff reported to be "doing ok for the past 2.5 weeks" and when symptoms do appear, they are exacerbated for "1-2 weeks and then improve again." (Doc. 13-7, pg. 55). At the follow-up in February, Plaintiff reported that her treatment of titrating Effexor had yielded excellent symptom control. Patient reported that she contracted COVID and her symptoms had been exacerbated. (Doc. 13-7, pg. 71).

**ANALYSIS**

Plaintiff asserts that the ALJ erred by assessing the RFC inconsistently with a previous finding of severe mental impairment under step two. Plaintiff asserts that the ALJ should have taken into account the severe mental impairment finding at step two and found Plaintiff's capacity to "perform simple instructions was limited in some degree." (Doc. 15, pg. 10). Plaintiff points to *K.L.J. v. Comm'r of Soc. Sec.*, 809 F. Supp. 3d 1301 (D. Colo. 2025) as applying the same legal analysis. (Doc. 26, pg. 11). For the reasons below, the Court is not persuaded by Plaintiff's arguments.

Seventh Circuit Precedent makes clear that step two of the five-step analysis is only a threshold requirement. *See Hickman v. Apfel*, 187 F.3d 683, 688 (7th Cir. 1999); *cf. Lorenzo F. v. Comm'r of Soc. Sec.*, No. 24-3329-CRL-EIL, 2026 LX 148190, at *4 (C.D. Ill. Jan. 6, 2026) ("Step 2 is a threshold inquiry at which a claimant must demonstrate a medically determinable impairment that is severe."). Step two exists to determine "whether medical evidence establishes an impairment or combination of impairments 'of such severity' as to the basis for a finding of inability to engage in any [substantial gainful activity]." SSR

85-28. Not all findings of severe mental impairment under step two will meet or equal those listed in Paragraph B of listing 12.06. *See id.*; 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.06.

Here, Plaintiff's mental impairment met the criteria for severe impairment at step two. However, once the ALJ assessed the severe mental impairment in comparison with the limitations listed in Paragraph B of Listing 12.06, her severe mental impairment was found to only moderately affect her abilities. Plaintiff's severe mental impairment did not meet at least two marked limitations or one extreme limitation. In addition to the severe mental impairment not meeting the criteria of Paragraph B, the ALJ relied on the opinions of the medical experts who found that the impairment only resulted in moderate deficits in interacting with others and concentration. The ALJ's analysis under steps two and three showed that Plaintiff had a severe mental impairment that resulted in moderate limitations.

While a finding of a severe mental impairment at step two does denote it is severe, "the limitations identified in the paragraph b and paragraph c criteria are *not an RFC assessment* but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process." SSR 96-8p, 1996 WL 374184, at *4 (July 2, 1996) (emphasis added) (citation modified); *see also Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 209 (3d Cir. 2019) ("[N]o incantations are required at steps four and five simply because a particular finding has been made at steps two and three. Those portions of the disability analysis serve distinct purposes and may be addressed in different ways."). Courts have "rejected the idea that an ALJ is required to include any particular limitations in a claimant's RFC

as a result of earlier findings that the claimant's mental impairment is severe and results in moderate limitations in concentration, persistence, and pace." *Michele H. v. Bisignano*, No. 2:25-cv-00293-JAW, 2026 WL 1815552, at *2 (D. Me. June 24, 2026); *see also Sandra J. B. v. Kijakazi*, No. 1:21-cv-00038-BU, 2022 WL 2919491, at *4 (N.D. Tex. July 1, 2022) ("[U]pon finding a severe mental impairment at step two, [the ALJ need not] adopt limitations specifically tailored to one of the non-exclusive basic work activities illustrated in 20 C.F.R. § 416.922(b).") (citation modified); *Thomas v. O'Malley*, No. 24-00195-WES, 2024 WL 4948805, at *7 (D.R.I. Dec. 3, 2024) (finding that moderate limitations found by the ALJ do not translate into any specific RFC restrictions).

Plaintiff also relies on *Harry P. v. Kijakazi*, 2022 WL 1541416 (N.D. Ill. 2022) and *O'Connor-Spinner v. Colvin*, 832 F.3d 690 (7th Cir. 2016). These two cases, while they do hold that the ALJ is required to include moderate limitations in the RFC, applied the previous criteria, not the current criteria. *See* 81 Fed. Reg. 66138, 2016 WL 5341732. The 7th Circuit recently stated that "even generic limitations, such as limiting a claimant to simple, repetitive tasks, may properly account for moderate limitations in concentration, persistence, and pace, so long as they adequately account for the claimant's demonstrated psychological symptoms found in the record." *Urbanek v. Saul*, 796 F. App'x 910, 914 (7th Cir. 2019) (citation modified). The ALJ's explanation of how the severe mental impairment was factored into the RFC is sufficient. Through the RFC, the ALJ used the correct regulatory framework, explained how the medical experts' opinions were weighed, and acknowledged Plaintiff's severe mental impairment, all of which adequately accounted for the moderate limitations of the severe mental impairment.

Plaintiff's contention that the capacity for simple tasks being entirely unlimited via the RFC amounts to error is not supported by case law or regulatory language.[7]

## CONCLUSION

For the aforementioned reasons, the Complaint (Doc. 1) filed by Starla R. S. is **DENIED** and the final decision of the Commissioner of Social Security denying her application for Disability Insurance Benefits is **AFFIRMED**. This action is **DISMISSED** with prejudice, and the Clerk of the Court is **DIRECTED** to enter judgment in favor of Defendant Commissioner of Social Security.

**SO ORDERED.**

Dated: September 29, 2026

DAVID W. DUGAN
United States District Judge

[7] To the extent that Plaintiff relies on *K.L.J. v. Comm'r of Soc. Sec.*, 809 F. Supp. 3d 1301 (D. Colo. 2025), it is misplaced for the same reasons.